**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **L.R., parent and natural guardian of N.R., a minor,** | | **CIVIL ACTION** |
| **Plaintiff,** | | |
| **v.** | | |
| | | **NO.  14-1787** |
| **SCHOOL DISTRICT OF PHILADELPHIA, SCHOOL REFORM COMMISSION OF THE SCHOOL DISTRICT OF PHILADELPHIA, and REGINALD M. LITTLEJOHN,** | | |
| **Defendants.** | | |

**DuBois, J.**                                                              **November 20, 2014**

**M E M O R A N D U M**

## I.      INTRODUCTION

This tragic case arises out of the sexual assault of N.R., a minor, after she was allegedly released to an unidentified adult from her elementary school on January 14, 2013.  Plaintiff L.R., the parent and natural guardian of N.R., filed the suit under 42 U.S.C. § 1983, alleging violations of N.R.'s rights under the Fourteenth Amendment against defendants School District of Philadelphia ("the District"), School Reform Commission of the School District of Philadelphia ("the Commission"), and Reginald M. Littlejohn ("Littlejohn").  Presently before the Court is Defendants' Motion to Dismiss Plaintiff's Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the reasons that follow, defendants' Motion to Dismiss is denied.

## II.      BACKGROUND

In the Complaint, plaintiff alleges the following facts: On January 14, 2013, Christina Regusters entered W.C. Bryant Elementary School, where N.R. was enrolled as a kindergarten student.  (Compl. ¶¶ 12, 17.)  She proceeded directly to N.R.'s classroom, where she encountered

defendant Littlejohn, a teacher at the school.  (<u>Id.</u> ¶ 18.)  Littlejohn asked Regusters to produce

identification and verification that N.R. was permitted to be released to her, but Regusters failed

to do so.[1]  (<u>Id.</u> ¶¶ 19-22.)  Despite this, Littlejohn, in direct violation of the District's policies,

"recklessly and willfully released N.R. into Regusters'[s] custody."  (<u>Id.</u> ¶ 23.)  After N.R. was

released to Regusters, Regusters sexually assaulted N.R..  (<u>Id.</u> ¶ 27.)  As a result,  N.R. sustained

significant physical injuries and other damages.  (<u>Id.</u> ¶ 29.)  At approximately 4:40 a.m. on

January 15, 2013, a sanitation worker discovered N.R. in a playground in Upper Darby,

Pennsylvania.  (<u>Id.</u> ¶ 23.)

In the Complaint, plaintiff further avers the following facts with respect to the District

and the Commission: Defendant School District of Philadelphia's policies provide that only the

principal or his or her designee, the assistant principal, or the teacher-in-charge may grant a

release of students during the school day and that the release must take place in the school office.

(<u>Id.</u> ¶¶ 15, 16.)  The policies state that "under no circumstances may a pre-kindergarten through

Grade 8 pupil be released without a properly identified adult" or without "the adult's

identification [being] checked against school records."  (<u>Id.</u> ¶ 16, 25.)  "Despite their awareness

of the risk of pupil abduction by unidentified individuals," policymakers within the District and

the Commission "deliberately chose not to train" or "supervise their employees…regarding

policies for release of pupils during the school day or acquiesced in a longstanding practice or

custom of inaction in this regard."  (<u>Id.</u> ¶¶ 52, 53.)  Finally, plaintiff contends that defendants'

actions violated her due process rights, in contravention of 42 U.S.C. § 1983.  (<u>Id.</u> ¶ 9.)

## III.    STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that, in response to a

---

[1] There are no allegations in the Complaint of what Regusters said to Littlejohn that prompted
him to ask for her identification and verification for N.R.'s release.

pleading, a defense of "failure to state a claim upon which relief can be granted" may be raised by motion to dismiss. To survive a motion to dismiss, a civil plaintiff must allege facts that "'raise a right to relief above the speculative level.'" Victaulic Co. v. Tieman, 499 F.3d 227, 234 (3d Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).  To satisfy the plausibility standard, a plaintiff's allegations must show that defendant's liability is more than "a sheer possibility." Id.  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557).

In Twombly, the Supreme Court used a "two-pronged approach," which it later formalized in Iqbal.  Iqbal, 556 U.S. at 679; Fowler v. UPMC Shadyside, 578 F.3d 203, 210–11 (3d Cir. 2009)  Under this approach, a district court first identifies those factual allegations that constitute nothing more than "legal conclusions" or "naked assertions." Twombly, 550 U.S. at 555, 557.  Such allegations are "not entitled to the assumption of truth" and must be disregarded. Iqbal, 556 U.S. at 679.  The court then assesses "the 'nub' of the plaintiff['s] complaint — the well-pleaded, nonconclusory factual allegation[s]" — to determine whether it states a plausible claim for relief.  Id.

## IV.   DISCUSSION

42 U.S.C. § 1983 provides, in part, that

[e]very person, who, under color of any statute, ordinance, regulation, custom, or usage, of a State or Territory. . . subjects, or causes to be subjected, any citizen of the United States. . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law. . . .

This statute does not create substantive rights; rather, it provides a remedy for violations of rights

established elsewhere.  City of Oklahoma City v. Tuttle, 471 U.S. 808, 816 (1985); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).  To state a claim under § 1983, a plaintiff must allege that a person acting under color of state law caused a deprivation of a right secured by the Constitution.  See Parratt v. Taylor, 451 U.S. 527, 535 (1981); Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir.1995).

Municipalities are "persons" who may be liable under § 1983.  Monell v. Dep't of Social Servs., 436 U.S. 658, 690 (1978).  Under § 1983, the District and the Commission are municipal entities.  To state a § 1983 claim against a municipality, a plaintiff must allege (1) a constitutional injury (2) that was caused when the municipality took action pursuant to a custom or policy.  Id. at 694; see also Collins v. City of Harker Heights, Tex., 503 U.S. 115, 120 (1992).

Plaintiff asserts violations of N.R's. due process rights by defendants.  The Court concludes that plaintiff's allegations state a claim for relief under § 1983.

### A.  State-Created Danger Theory

Plaintiff alleges a deprivation of N.R.'s right to bodily integrity under the Due Process Clause.  (Compl. ¶ 36.)  The Due Process Clause of the Fourteenth Amendment provides that "[n]o State ... shall deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV § 2.  This clause "is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security. It forbids the State itself to deprive individuals of life, liberty, or property without 'due process of law,' but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means."  DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189, 195 (1989).

4

There are two exceptions to <u>DeShaney</u> that allow the imposition of § 1983 liability for a state actor's failure to protect.  First, liability may attach when the state takes control of an individual and enters into a so-called "special relationship."  <u>See, e.g.</u>, <u>Youngberg v. Romeo</u>, 457 U.S. 307 (1982) (state has duty to ensure safety of involuntarily-committed mental patients); <u>Estelle v. Gamble</u>, 429 U.S. 97, 97 (1976) (state has duty to provide medical care to inmates).[2] Second, liability may attach when the state "acts in a way that makes a person substantially more vulnerable to injury from another source than he or she would have been in the absence of state intervention."  <u>Schieber v. City of Philadelphia</u>, 320 F.3d 409, 416 (3d Cir. 2003).  Plaintiff asserts a claim only under the second theory of liability, the state-created danger exception.

A successful state-created danger claim must establish four elements:

> (1) the harm ultimately caused was foreseeable and fairly direct; (2) a state actor acted with a degree of culpability that shocks the conscience; (3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

<u>Bright v. Westmoreland County</u>, 443 F.3d 276, 281 (3d Cir. 2006).  In their Motion to Dismiss, defendants contend that plaintiff has not stated a cognizable claim under the state-created danger theory because she has not plead sufficient facts to satisfy any of the four elements of the test.  Defendants further argue that plaintiff has not adequately plead municipal liability under §1983.

The Court will first analyze whether Littlejohn's alleged conduct satisfies the elements of the state-created danger test.

---

[2] The parties agree that the "special relationship" exception has no application to this case.  <u>See</u> <u>D.R. v. Middle Bucks Area Vocational Technical Sch.</u>, 972 F.2d 1364, 1373 (3d Cir.1992) (en banc) (holding that the "special relationship" exception does not apply to the relationship between a student and a school).

### a.  Individual Liability

### i.  Element One: Foreseeable and Direct Harm

The first element of a state-created danger claim "requires that the harm ultimately caused was a foreseeable and a fairly direct result of the state's actions."  Morse v. Lower Merion Sch. Dist., 132 F. 3d 902, 908 (3d Cir. 1997).  Defendants argue that plaintiff has failed to adequately plead the first element of the state-created danger test because "the facts do not support any inference that Littlejohn knew, or should have known, that Regusters intended to abduct and molest N.R. . . or that Littlejohn was placed on notice, with concrete information, that N.R. was about to be harmed."  (Def.'s Mot. to Dismiss at 13-14.)  In response, plaintiff contends that as "a matter of common sense," N.R. faced an inherent danger from a "random, adult stranger" and that N.R. suffered a "fairly direct" harm as a result of Littlejohn releasing her to Regusters.  (Pl.'s Resp. Br. at 8-9.)  The Court concludes that, in the context of a state-created danger claim, the harm incurred by N.R. was foreseeable and direct.

The U.S. Court of Appeals for the Third Circuit has held that to adequately plead "foreseeability," plaintiff must "allege an awareness on the part of the state actors that rises to [the] level of actual knowledge or an awareness of risk that is sufficiently concrete to put the actors on notice of the harm."  Phillips v. Cnty. of Allegheny, 515 F.3d 224, 238 (3d Cir. 2008).  With respect to causation, the proper inquiry under the state-created danger theory "is not whether the state actor 'pulled the trigger,' but whether the state actor placed the plaintiff in a bullet's likely path."  Sciotto v. Marple Newton Sch. Dist., 81 F. Supp. 2d 559, 565 n.8 (E.D. Pa. 1999).  "Causation in the 'state-created danger' setting will often be less than direct, as the factual setting necessarily includes an independent 'danger'— in some cases a third party. . . — that leads to an injury to the plaintiff."  Id. at 565.

6

In support of their contention that the harm that befell N.R. was neither foreseeable nor direct, defendants primarily rely on Morse, in which a mentally deranged woman entered a backdoor of a daycare after "school district employees, contrary to their own regulations, unlocked the door for [construction] contractors to work[,]" and proceeded to shoot a teacher. Phillips, 515 F.3d at 238 (citing Morse, 132 F.3d at 908–09).  The Third Circuit held in Morse that defendants could not have "foreseen that allowing construction workers to use an unlocked back entrance for access to the school building would result in the murderous act of a mentally unstable third party."  132 F.3d at 908.  The Court further ruled that even if it accepted the fact that the shooter accessed the school through the unlocked rear entrance, it did not compel the conclusion that the attack occurred as a "direct result of defendants allowing the construction crews to prop open the door."  Id. at 909.

This case is clearly distinguishable from Morse.  The foreseeability of harm to N.R. was significantly greater than the foreseeability of the "random attack perpetrated" against the daycare teacher in Morse.  Id.  In this case, the facts as alleged demonstrate that Littlejohn confronted a direct and appreciable risk of danger when Regusters, an unidentified adult, entered his classroom.  (Compl. ¶ 18.)  Plaintiff avers that Littlejohn released N.R. to Regusters despite Regusters's failure to comply with Littlejohn's request to produce identification and authorization for N.R.'s release.  (Id. ¶¶ 18-22.)  While plaintiff does not allege that Littlejohn had specific knowledge of Regusters's intentions to abduct and molest N.R., plaintiff need only aver defendant's "awareness of a risk of violence or harm."  Caissie v. City of Cape May, 619 F. Supp. 2d 110, 118 (D.N.J. 2009) (citing Phillips, 515 F.3d at 238-39) (emphasis added).  In this case, "ordinary common sense and experience" dictate that there is an inherent risk of harm in releasing a five-year-old student to an adult stranger who has failed to produce identification and

authorization for release despite being asked to do so.  See Phillips, 515 F.3d at 237 (explaining

that in Kneipp, "ordinary common sense and experience. . . sufficiently informed the officer of

the foreseeability of harm" where a police officer left an intoxicated woman alone outside at

night); Wood v. Ostrander, 879 F.2d 583, 590 (9th Cir. 1989) (noting that the "inherent danger

facing a woman left alone at night in an unsafe area is a matter of common sense").

Furthermore, the fact that the District allegedly had specific policies restricting the release of

pre-kindergarten through grade 8 students supports the inference that Littlejohn's actions created

a palpable risk of harm to N.R.  Thus, the foreseeability of harm to N.R. has been sufficiently

plead.

  The causal link between Littlejohn's release of N.R. to Regusters and the harm N.R.

suffered is also far more direct than the attenuated link in Morse between defendants' act and the

subsequent shooting of a daycare teacher by a random third-party.  In this case, plaintiff has

plead that Littlejohn undertook actions that exposed N.R. to danger by releasing her into the

custody of an unidentified adult who then sexually assaulted her.  N.R. was "an identifiable or

discrete individual under the circumstances" who suffered harm at the hands of Regusters as a

direct result of Littlejohn's conduct.  Phillips, 515 F.3d at 239 (causal connection adequately

plead where state actors provided a third party with requested confidential information, which

third party then used to locate and kill the victim).  Plaintiff also alleges that Regusters sexually

assaulted N.R. within hours of her release by Littlejohn, thus "concerns of attenuation are

mitigated."  See Caissie, 619 F. Supp. 2d at 119 (causal link adequately plead where plaintiff's

injury by assailant occurred the same night he was released from custody by defendants).

Therefore, plaintiff has adequately plead that the attack on N.R. was a "fairly direct" result of

Littlejohn's actions, and the Court concludes that plaintiff has satisfied the first element of her state-created danger claim.

### ii.   Element Two: Conscience Shocking Conduct

The Court next turns to the question of whether plaintiff has adequately alleged that Littlejohn "acted with a degree of culpability that shocks the conscience." Bright, 443 F3d at 282.  The Third Circuit has clarified that "what is required to meet the conscience-shocking level will depend upon the circumstances of each case, particularly the extent to which deliberation is possible." Sanford v. Stiles, 456 F.3d 298, 310 (3d Cir. 2006).  "The level of culpability required to shock the conscience increases as the time state actors have to deliberate decreases." Id. at 309.  In a "hyperpressurized environment," the culpability standard generally requires that the state official have the intent to cause harm. Id.  However, "in cases where deliberation is possible and officials have the time to make 'unhurried judgments,' deliberate indifference is sufficient." Id.  The Third Circuit has further held that for "situations in which there is some urgency and only 'hurried deliberation' is practical,'" but immediate or split-second decision making is not required, defendants' must "disregard a great risk of serious harm rather than a substantial risk" to satisfy the culpability prong of the state-created danger test. Id. at 310.

Defendants argue that plaintiff has failed to plead any facts which could provide an inference that Littlejohn was placed on notice that Regusters was going to harm N.R.  (Def.'s Mot. to Dismiss at 16.)  Defendants further contend that Littlejohn's failure to require identification from Regusters "does not rise to the level of conscious shocking behavior required to meet a constitutional violation."  (Id.)  In response, plaintiff argues that because the Complaint does not allege that Littlejohn was under pressure to make a hurried judgment, the deliberate indifference culpability standard should apply.  (Pl.'s Resp. Br. at 12.)  Plaintiff asserts that

Littlejohn "ignored the foreseeable danger or risk posed" by releasing N.R. to Regusters and acted with "at least as much deliberate indifference as the officers in Kneipp[.]" (Id.)

Taking the allegations as true, the Court first concludes that the Complaint is devoid of allegations that Littlejohn confronted a "hyperpressurized environment" or any sense of urgency when he encountered Regusters on January 14, 2013. The Complaint avers that when Regusters entered W.C. Bryant Elementary School, she proceeded directly to N.R.'s classroom, where she encountered Littlejohn. (Compl. ¶ 18.) Plaintiff has not plead that, when confronted by Regusters, Littlejohn was required to make a "hurried judgment" with respect to releasing N.R. See Phillips, 515 F.3d at 241 (concluding that deliberate indifference standard applied where complaint failed to allege facts demonstrating "any sense of urgency or emergency"). For example, the Complaint does not allege that Regusters pressured Littlejohn to make a decision quickly or that the circumstances in Littlejohn's classroom or his responsibilities as a teacher prevented him from proceeding deliberately at the time he encountered Regusters. See Hillard v. Lampeter-Strasburg Sch. Dist., No. 03-2198, 2004 WL 1091050, at *4 (E.D. Pa. May 13, 2004) (concluding that deliberate indifference is the appropriate standard because "[a] school environment is much more akin to that of a prison, where, students, like inmates, engage in activities in a controlled environment under constant supervision by teachers and staff. . . teachers attempt to structure their days according to lesson plans that are prepared in advance").[3] Instead, the alleged fact that Littlejohn took the time to ask Regusters for identification and

---

[3] Other district courts have also concluded that cases involving a school environment warrant the application of the deliberate indifference standard. See, e.g., Brown v. Farrell, No. 3:05-CV-0421, 2006 WL 277091, at * 3 (M.D. Pa. Feb. 3, 2006); Sciotto v. Marple Newton Sch. Dist., 81 F. Supp. 2d 559, 566 (E.D. Pa. 1999); Maxwell ex rel. Maxwell v. Sch. Dist. of City of Philadelphia, 53 F. Supp. 2d 787, 793 (E.D. Pa. 1999); see also Caissie, 619 F. Supp. at 119-20 (applying deliberate indifference standard where defendants' decision to release assailant from custody and failure to warn plaintiff of the release was made "with the luxury of relaxed deliberation") (citation omitted).

verification for N.R.'s release demonstrates that the situation allowed for at least some forethought and deliberation.  See Stiles, 456 F.3d at 310.  As the Complaint fails to allege any facts that support an inference of urgency, the Court concludes that to satisfy the "shocks the conscience" element, plaintiff must aver facts that, if proved, establish that Littlejohn acted with deliberate indifference to the risk of harm to N.R.

The Third Circuit has "describe[d] deliberate indifference as requiring 'that a person consciously disregard a substantial risk of serious harm.'"  Kaucher v. Cnty. Of Bucks, 455 F.3d 418, 427 (3d. 2006) (quoting Ziccardi v. City of Phila., 288 F.3d 57, 65 (3d Cir. 2002)) (internal quotation marks omitted).  Importantly, the Third Circuit does not require "actual knowledge" to satisfy the deliberate indifference culpability standard in state-created danger claims.  See Phillips, 515 F.3d  at 242 ("Our test for whether a plaintiff has alleged that an action 'shocks the conscience' does not contain a requirement that the actor know his or her actions are 'conscience-shocking.'").  The state actor's conduct "must evince a willingness to ignore a foreseeable danger or risk."  Morse, 132 F.3d at 910.

The Court concludes that plaintiff has sufficiently alleged that Littlejohn acted with deliberate indifference toward N.R.'s safety.[4]  Littlejohn's alleged conduct is analogous, albeit

---

[4] The Court concludes that defendants' heavy reliance on an en banc Fifth Circuit case, Doe ex rel. Magee v. Covington County School District  ("Magee"), is misplaced.  675 F.3d 849 (5th Cir. 2012).  In Magee, an unauthorized individual repeatedly checked out a nine-year old student from her elementary school and sexually assaulted her prior to returning the student to school. Id. at 853.  While Magee is factually analogous to this case, Magee focuses on the special-relationship theory of liability, which is not at issue in this case.  Furthermore, the Fifth Circuit has not recognized the state-created danger theory of liability.  Id. at 864 ("Unlike many of our sister circuits, we have never explicitly adopted the state-created danger theory.").  Finally, while the Magee court noted that "the allegations would not support. . . a [claim under the state-created danger] theory" even if the Fifth Circuit recognized such a theory of liability, the court applied a different standard of culpability than that which would be required in a state-created danger case in the Third Circuit.  Id. at 864-65.  In contrast to the Third Circuit's deliberate indifference standard, the Fifth Circuit requires defendant's actual knowledge of the risk of harm.  Thus, the

more egregious, than the officer's conduct in <u>Kneipp</u>, in which the Third Circuit held that plaintiffs had adduced sufficient evidence to raise a material issue as to whether defendant officer acted with deliberate indifference in sending a woman home unescorted at night, despite his awareness that the woman was highly intoxicated.  95 F.3d at 1208.  In <u>Kneipp</u>, police officers detained a husband and wife walking home from a bar at night during winter.  <u>Id.</u> at 1201.  The wife was visibly intoxicated and unable to walk without assistance.  <u>Id.</u>  Despite the wife's condition, the police officers permitted her husband to return home to relieve a babysitter who was watching the couple's children.  <u>Id.</u> at 1203.  The officers then detained and later released the wife, who was left to return home alone.  <u>Id.</u>  The woman was eventually found unconscious at the bottom of an embankment near her home and suffered hypothermia, resulting in permanent brain damage, due to her exposure to the cold.  <u>Id.</u>

Like the officer in <u>Kneipp</u>, Littlejohn was presented with a substantial risk of harm.  <u>See</u> <u>supra</u> Part IV(A)(a)(i).  While the risk of harm in releasing a five-year old to an unidentified adult is a "matter of common sense," the fact that Littlejohn asked Regusters to produce both identification and verification for N.R.'s release further evidences that he was aware of the risk of harm inherent in releasing N.R. to Regusters.  (Compl. ¶¶ 19, 20.)  In <u>Kneipp</u>, despite an awareness of the woman's intoxicated condition, the officer left the woman to return home alone.  Similarly, in this case, plaintiff has alleged that despite an awareness of the risk of placing N.R. into the custody of an unidentified adult, Littlejohn released N.R.  (<u>Id.</u> ¶¶ 23, 24.)  In both cases, there was an inherent and foreseeable risk of danger with which the state actor was confronted and consciously ignored.  <u>See</u> <u>Maxwell ex rel. Maxwell v. Sch. Dist. of City of Philadelphia</u>, 53

court explained that without allegations "that the school knew about an immediate danger to [the student]'s safety. . . the claim would necessarily fail."  <u>Id.</u> at 866.  Actual knowledge of the risk of harm to N.R. is not required under the Third Circuit's culpability standard.  For all such reasons, <u>Magee</u> is inapplicable to this case.

F. Supp. 2d 787, 793 (E.D. Pa. 1999) (teacher acted with "similarly culpable mental state [as the officer in Kneipp] because she failed to supervise obviously dangerous students in a classroom that she let get out of control").  The Court thus concludes that plaintiff has adequately plead that Littlejohn acted with deliberate indifference to the risk of harm to N.R.

### iii.   Element Three: Foreseeable Victim

The third element of a state-created danger claim "requires that some relationship exist between the state and the plaintiff."  Phillips, 515 F.3d at 242.  The relationship requirement "contemplates some contact such that the plaintiff was a foreseeable victim of the defendant's acts in a tort sense."  Morse, 132 F.3d at 912.  "Such a relationship may exist where the plaintiff was a member of a discrete class of persons subjected to the potential harm brought about by the state's actions." Phillips, 515 F.3d at 242 (citing Morse, 132 F.3d at 913; Rivas v. City of Passaic, 365 F.3d 181, 197 (3d Cir. 2004)).  As explained in Mark, "[t]he cases where the state-created danger theory [has been] applied [a]re based on discrete, grossly reckless acts committed by the state or state actors using their peculiar positions as state actors, leaving a discrete plaintiff vulnerable to foreseeable injury." 51 F.3d at 1153; see, e.g., Kneipp, 95 F.3d at 1208 (reasonable jury could find that officer exerted sufficient control over a woman when "he sent her home unescorted in a visibly intoxicated state in cold weather").  In contrast, where "the alleged unlawful act is a policy directed at the public at large. . . there is no relationship between the defendant and the plaintiff."  Id.

The third element of plaintiff's state-created danger claim is easily satisfied by the alleged facts.  The Complaint avers that Littlejohn released N.R. alone to Regusters's custody, in direct contravention of the District's policies restricting the release of younger students during the school day.  In allegedly releasing N.R. to Regusters, Littlejohn placed N.R., a single student

under his direct supervision, in danger; Littlejohn's conduct did not create "a danger to the 'public at large.'"  Morse, 132 F.3d at 913 n. 12.  Therefore, plaintiff has met her burden under the third element of the state-created danger test.

### iv.   Element Four: Affirmative Act Creating a Danger

The fourth element requires state officials to engage in "affirmative acts which work to plaintiffs' detriments in terms of exposure to danger."  D.R. by L.R. v. Middle Bucks Area Vocational Technical Sch., 972 F.2d 1364, 1374 (3d Cir. 1992).  Plaintiff must allege that "a state actor used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all."  Bright, 443 F.3d at 281 (citing DeShaney, 489 U.S. at 201).  "It is the misuse of state authority, rather than a failure to use it, that can violate the Due Process Clause."  Id. at 282.  While "the line between action and inaction is not always easily drawn. . .'if the state puts a man in a position of danger from private persons and then fails to protect him, it will not be heard to say that its role was merely passive; it is as much an active tortfeasor as if it had thrown him into a snake pit.'"  Morrow v. Balaski, 719 F.3d 160, 177-78 (3d Cir.) (quoting D.R., 972 F.2d at 1374); see also Mark, 51 F.3d at 1152 (fourth prong is satisfied where "the state actors used their authority to create an opportunity that otherwise would not have existed for the third party's crime to occur").

In the Complaint, plaintiff avers that "[b]y willfully releasing N.R. to Regusters, Defendant Littlejohn affirmatively used his authority over N.R. in a way that": (1) "created a danger to N.R."; (2) "rendered N.R. substantially more vulnerable to danger than had Defendant Littlejohn not acted at all"; and (3) "increased N.R.'s risk of harm."  (Compl. ¶¶ 47-49.)  Plaintiff further alleges that "[a]s a teacher for the School District of Philadelphia, Defendant Littlejohn affirmatively used his authority to create an opportunity that otherwise would not have existed

for Regusters to harm N.R." (Id. ¶ 50.)  In their Motion to Dismiss, defendants argue that

plaintiff's theory of liability rests on Littlejohn's mere failure to act, specifically a failure to

require Regusters to produce identification and verification, rather than any affirmative action.

(Def.'s Mot. to Dismiss at 12.)  At this stage of the proceedings, the Court concludes that

plaintiff has met her burden under the fourth element of the state-created danger test.

This case is analogous to Kneipp, in which the Third Circuit held that a reasonable juror

could find that "the officers 'used their authority as police officers to create a dangerous

situation' when they separated Kneipp from her husband, who had previously been ensuring her

safety."  Henderson v. City of Philadelphia, No. 98-3861, 1999 WL 482305, at *12 (E.D. Pa.

July 12, 1999), (quoting Kneipp, 95 F.3d at 1209), aff'd sub nom., Estate of Henderson v. City of

Philadelphia, 216 F.3d 1076 (3d Cir. 2000)).  The Kneipp Court's reasoning is instructive:

> The conduct of the police, in allowing Joseph to go home alone and in detaining
> Samantha, and then sending her home unescorted in a seriously intoxicated state in cold
> weather, made Samantha more vulnerable to harm. It is conceivable that, but for the
> intervention of the police, Joseph would have continued to escort his wife back to their
> apartment where she would have been safe. A jury could find that Samantha was in a
> worse position after the police intervened than she would have been if they had not done
> so. As a result of the affirmative acts of the police officers, the danger or risk of injury to
> Samantha was greatly increased.

Kneipp, 95 F.3d at 1209.

In this case, Littlejohn maintained direct authority and supervision over N.R. as the

teacher in her classroom.[5]  Taking the facts as true, he exercised his authority as a state actor to

"send [his student] straight to the clutches of her assailant[], as the officers did when they sent

Kneipp into the cold night air."  Brown v. Sch. Dist. of Philadelphia, 456 F. App'x 88, 92 (3d

---

[5] The Complaint avers that Littlejohn was a teacher at W.C. Bryant Elementary School and that
Regusters encountered Littlejohn after proceeding directly to N.R.'s classroom.  (Compl. ¶¶ 8,
18.)  From these allegations, viewed in the light most favorable to plaintiff, the Court may infer
that Littlejohn is alleged to be the teacher in charge of N.R.

Cir. 2011).  Prior to her release, N.R. remained in her classroom, "safely ensconced at Bryant Elementary."  (Pl.'s Resp. Br. at 8.)  Littlejohn affirmatively intervened once he delivered N.R. to Regusters, despite Regusters's failure to produce the requisite documentation.  Taking the facts as true, but for Littlejohn's intervention, N.R. would have remained safe in her elementary school classroom.  N.R. was significantly more vulnerable to harm once Littlejohn allegedly released her to Regusters, who removed her from the school premises, thereby cutting N.R. off from access to assistance.  See Henderson, 1999 WL 482305, at *12 (explaining that in Kneipp, defendant "officer's decision to separate Kneipp from her husband removed her source of private aid and left her 'in a worse position' after his intervention than she was in before his intervention") (quoting Kneipp, 95 F.3d at 1209); Maxwell, 53 F. Supp. 2d at 793 (affirmative act component of state-created danger test satisfied where "defendants locked the classroom door, isolating the victims with their attackers, and cutting the vulnerable students off from assistance"); see also Perez ex rel. Estate of Perez v. City Of Philadelphia, 701 F. Supp. 2d 658, 669 (E.D. Pa. 2010) (explaining that Kneipp and Rivas "required a physical interaction with the state in which an act of the state limits the plaintiff's freedom of action, including the option to seek outside help").

In support of their argument that Littlejohn merely failed to intervene rather than affirmatively act, defendants rely on Morrow and Brown.  The Court finds that this case is distinguishable.  In Morrow, two sisters brought a § 1983 claim against a school district and an assistant principal for failing to protect them from bullying by fellow students.  719 F.3d at 163. The Third Circuit held that the school district was not liable under the state-created danger theory because "permit[ting]" the harassing student to return to school following a suspension constituted "passive inaction" rather than "affirmative acts."  Id. at 178-79.  In Brown, a special-

education student brought a § 1983 claim against a school district and principal after she was sexually assaulted by other students.  456 F. App'x at 89.  The Third Circuit affirmed the District Court's holding that the school's promise to provide the student with one-on-one supervision and its subsequent failure to provide it "did not create an affirmative duty to protect her from the student assailants."  Id. at 91.  Morrow and Brown involve the failure of school officials to intervene to prevent student violence committed by other students.  In contrast, this case involves allegations of a teacher taking affirmative steps to turn over a child under his supervision to an adult stranger, isolating her from accessing assistance, and thereby rendering her more vulnerable to harm.  Thus, the Court concludes that plaintiff has plead the final component of the state-created danger claim.

### b.  Qualified Immunity

Even though the Court concludes that Littlejohn's alleged conduct constituted a constitutional violation, the Court must address the question whether he is nonetheless protected from liability by the doctrine of qualified immunity.  The Court concludes that, at this stage of the proceedings, Litttlejohn is not entitled to qualified immunity.

The qualified immunity analysis involves two steps: "(1) whether the plaintiff alleged sufficient facts to establish the violation of a constitutional right, and (2) whether the right was 'clearly established' at the time of the defendant's actions."  Estate of Lagano v. Bergen Cnty. Prosecutor's Office, 769 F.3d 850, 858 (3d Cir. 2014) (quoting Pearson v. Callahan, 555 U.S. 223, 232 (2009)).  "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Pearson, 555 U.S. at 231 (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  The Third Circuit has held that

"qualified immunity will be upheld on a 12(b)(6) motion only when the immunity is established on the face of the complaint." Leveto v. Lapina, 258 F.3d 156, 161 (3d Cir. 2001) (internal quotations and citations omitted); cf. Saucier v. Katz, 533 U.S. 194, 201 (2001) (qualified immunity determined, in part, on basis of "parties' submissions").

As discussed supra in Part IV(A), plaintiff has adequately plead a violation of N.R.'s constitutional rights — a violation of N.R.'s Fourteenth Amendment right to bodily integrity by Littlejohn under the state-created danger theory. Thus, the Court turns to the second prong of the qualified immunity analysis, whether the right at issue was "clearly established" at the time Littlejohn released N.R. to Regusters on January 14, 2013.

The "clearly established" inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition . . . ." Saucier, 533 U.S. at 201. Nevertheless, to find that a right is clearly established, there need not be "'a previous precedent directly in point.'" Acierno v. Cloutier, 40 F.3d 597, 620 (3d Cir. 1994) (quoting Good v. Dauphin County Soc. Servs. for Children & Youth, 891 F.2d 1087, 1092 (3d Cir. 1989)). "'[R]elatively strict factual identity' between applicable precedent and the case at issue" is not required. Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 726 (3d Cir. 1989) (quoting People of Three Mile Island v. Nuclear Regulatory Comm., 747 F.2d 139, 144 (3d Cir. 1984)).

The Third Circuit has recently examined what precedential authority is required to satisfy the second prong of the qualified immunity analysis. In Estate of Lagano, the Third Circuit rejected the District Court's "unduly narrow construction of the right at issue" and its determination that "the right at issue was not clearly established," explaining that plaintiffs need not point to a binding decision recognizing a well-established right's application to the specific context at issue to overcome a qualified immunity defense. 769 F.3d at 859 ("[Plaintiff] can

18

overcome [defendant's] qualified immunity defense without proving that we have previously issued a binding decision recognizing a state-created danger in the context of the disclosure of a confidential informant's status, and the District Court erred in requiring it to do so.").

In this case, the fact that the Third Circuit has not issued a binding decision recognizing the state-created danger theory in the context of the release of a student to an unidentified adult is not dispositive.  Instead of conducting a "'fact-by-fact' match up," Doe 1 v. Cnty. of Fayette, No. 2:14-CV-00196, 2014 WL 5493814, at *6 (W.D. Pa. Oct. 30, 2014), a court must center its inquiry with respect to the second prong of the qualified immunity test on "whether 'it would be clear to a reasonable [official]' that the alleged [release] was unlawful under the circumstances." Estate of Lagano, 769 F.3d at 859 (quoting Saucier, 533 U.S. at 202 (2001)).  This Court concludes that it would have been clear to a reasonable school official that Littlejohn's conduct was unlawful.  See Sciotto, 81 F. Supp. 2d at 570 ("[I]t was clearly established at the time of the injury that a student enjoyed a constitutional right to be free from school officials' deliberate indifference to, or acts that increase the risk of serious injury from unjustified invasions of bodily integrity perpetrated by third parties.").

This Circuit has long "recognized that '[i]ndividuals have a constitutional liberty interest in personal bodily integrity that is protected by the Due Process Clause of the Fourteenth Amendment.'" Estate of Lagano, 769 F.3d at 858 (quoting Phillips, 515 F.3d at 235).  More specifically, this Circuit has recognized a student's right to bodily integrity under the Fourteenth Amendment.  As explained in Sciotto v. Marple Newton Sch. Dist.,

> In the school setting, the Supreme Court long ago ruled that the Due Process Clause protects "a right to be free from unjustified intrusions on personal security" in the form of corporal punishment by teachers.  See Ingraham v. Wright, 430 U.S. 651, 673, 97 S.Ct. 1401, 1403, 51 L.Ed.2d 711 (1977).  More than a decade ago the Court of Appeals for the Third Circuit recognized a student's right to be free from sexual molestation by a teacher under the Fourteenth Amendment. See Stoneking, 882 F.2d at 727.

19

81 F. Supp. 2d at 570.

Generally "this liberty interest does not require the state to affirmatively protect its citizens." Estate of Lagano , 769 F.3d at 858.  However, as discussed supra in Part IV(A), the Due Process Clause can impose an affirmative obligation on state officials under the state-created danger theory, and "[i]t has been clearly established in this Circuit for nearly two decades that a state-created danger violates due process."  Id. at 859 (citing Kneipp, 95 F.3d at 1211).

Although there appears to be no factually identical binding precedent, the Court concludes that there was sufficient precedent to put a reasonable school official on notice that his conduct, more specifically, the release of a kindergarten student to a complete stranger despite the individual's failure to provide identification or verification for the child's release upon request, was unlawful under the circumstances.  At the outset, the Court reiterates that Littlejohn's alleged conduct of "sending [N.R] straight to the clutches of her assailant[]," is analogous to the state official's act of releasing the woman in Kneipp, intoxicated and alone, "into the cold night air."  Brown, 456 F. App'x at 92.  As previously discussed, the Complaint sets forth allegations that, if proved, demonstrate that despite an awareness of the risk triggered by his conduct, Littlejohn, like the defendant officer in Kneipp, ignored the risk and exercised his authority as a state official to render the victim more vulnerable to harm.  See supra Part IV(A)(a).

The Court notes that, in several cases, the Third Circuit has held that in the absence of an affirmative act, school official defendants could not be held liable under the state-created danger theory for third-party acts.  See, e.g., D.R., 972 F.2d at 1374 (finding it to be "an extremely close case," the court held that school official defendants could not be held liable under a state-created danger theory for sexual assaults committed by other students because they did not

"increase the risk of harm to the victim"); Hunter v. Carbondale Area Sch. Dist., 829 F. Supp. 714, 721 (M.D. Pa.) (teacher not liable where students chased special-education student into a stream where he drowned because defendant teacher did not "create[] the Decedent's peril, add[] to the risk of harm to the Decedent or act[] to render the Decedent more vulnerable to the alleged student Defendants' conduct"), aff'd, 5 F.3d 1489 (3d Cir. 1993); Mohammed v. Sch. Dist. of Philadelphia, 196 F. App'x 79, 81-82 (3d Cir. 2006) (non-precedential) (school district's failure to monitor high school stairwell did not create danger to assaulted student nor "render[] him 'more vulnerable to injury from another source than he. . . would have been in the absence of state intervention'" and thus was not liable) (quoting Schieber, 320 F.3d at 416).  These Third Circuit cases would make it clear to reasonable school officials that if they were to act affirmatively to create a danger to the victim or render the victim more vulnerable to harm, they could be held liable for third-party acts under the state-created danger.  See Sciotto, 81 F. Supp. 2d at 571 (explaining that "it was clear after Hunter that a constitutional claim under § 1983 would be established in circumstances where school officials encouraged, facilitated, or authorized the conduct that led to the injury").

        More recently, in Brown, the Third Circuit, in a non-precedential opinion,[6] by way of distinguishing the case from Kneipp, set forth examples of when a school official's conduct may constitute an affirmative act establishing liability under the state-created danger theory, including: "keeping anyone else from helping [plaintiff]" or "send[ing] plaintiff straight into the clutches of her assailants."  Brown, 456 F. App'x at 92.  This case, in which Littlejohn took affirmative steps to place N.R. directly into the custody of her attacker, is just such an example.

---

[6] Although not binding on the Court, this Court finds the Brown decision instructive.

Moreover, district courts in the Third Circuit have held school officials liable under the state-created danger doctrine for harm resulting from third-party acts or outside conditions caused by the actions of school officials.  See, e.g., Hillard, 2004 WL 1091050, at *5 (genuine issue of material fact precluded summary judgment where student alleged violation of Fourteenth Amendment rights under state-created danger theory due to injuries sustained in athletic training exercise planned and facilitated by defendant teacher); Sciotto, 81 F. Supp. 2d at 567 (reasonable jury could conclude that coach and athletic director were deliberately indifferent to danger of injury resulting from a policy of inviting older, alumni wrestlers to practice with the high school team); Maxwell, 53 F. Supp. 2d at 793 (plaintiff who was attacked by other students adequately alleged claim against defendant teacher under state-created danger theory where teacher locked classroom door, thereby isolating victim with attackers and cutting student off from assistance).

The aforementioned cases, taken together, were sufficient to put a reasonable state official in Littlejohn's position on notice that his conduct was unlawful.  As the Court concludes that plaintiff has adequately alleged an underlying constitutional violation of N.R.'s Fourteenth Amendment rights under the state-created danger theory and that the right at issue was clearly established at the time of defendant's conduct, Littlejohn is not entitled to qualified immunity at this stage of the proceedings.

### B.  Monell Claim

Plaintiff also asserts a claim of municipal liability against the District and the Commission, which are municipal corporations organized and existing under and by virtue of the laws of Pennsylvania.  (Compl. ¶¶ 3, 6.)  Plaintiff argues that defendants deliberately chose not to train and supervise their employees with respect to their policies restricting the release of

students during the day.  (Id. ¶¶ 52, 53.)  The Court concludes that plaintiff has adequately plead a "failure to train and supervise" claim under Monell against the District and the Commission.

Municipalities cannot be held liable under § 1983 under a theory of vicarious liability. Monell v. Dep't of Social Servs., 436 U.S. 658, 694 (1978).  Rather, municipal liability under §1983 is limited to those circumstances in which the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury."  Id.; see also Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown, 520 U.S. 397, 404 (1997) ("[P]laintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.") (citations omitted).  The Third Circuit has outlined three circumstances in which municipal liability will attach under § 1983:

> First, the municipality will be liable if its employee acted pursuant to a formal government policy or a standard operating procedure long accepted within the government entity; second, liability will attach when the individual has policy making authority rendering his or her behavior an act of official government policy; third, the municipality will be liable if an official with authority has ratified the unconstitutional actions of a subordinate, rendering such behavior official for liability purposes.

McGreevy v. Stroup, 413 F.3d 359, 367 (3d Cir.2005) (internal citations omitted).

The Third Circuit has also made clear that liability can be imposed on a municipal entity where the alleged policy or practice "concerns a failure to train or supervise municipal employees" by showing "that the failure amounts to 'deliberate indifference' to the rights of persons with whom those employees will come into contact."  Carter v. City of Phila., 181 F.3d 339, 357 (3d Cir.1999) (quoting City of Canton, Ohio v. Harris, 489 U.S. 378, 388 (1989) ("Canton")).  "A pattern of similar constitutional violations by untrained [or unsupervised] employees is 'ordinarily necessary' to demonstrate deliberate indifference. . . ."  Connick v. Thompson, 131 S. Ct. 1350, 1360 (2011) (citing Brown, 520 U.S. at 409).  However, in Canton,

the Supreme Court left open the possibility that a pattern of similar violations might not be

necessary to show deliberate indifference where the consequences of the training or supervision

failure are "highly predictable." Id.  While the "single-incident" theory of liability can only be

established in a "narrow range of circumstances," Brown, 520 U.S. at 398, the Supreme Court

posed one such hypothetical set of circumstances in Canton of a city that arms its officers with

firearms and requires them to arrest fleeing felons, but fails to train them on the constitutional

limitations on the use of deadly force.  Canton, 489 U.S. at 390 n.10; but see Connick, 131 S. Ct.

at 1361 ("failure to train prosecutors in their Brady obligations" did not fall within this range of

circumstances because prosecutors had legal training and ethical obligations to which to adhere).

        Plaintiff does not state whether her "failure to train and supervise" Monell claim is

brought under a "pattern of violations" theory or a "single violation" theory.  However, the Court

concludes that the Complaint pleads sufficient facts under a "single violation theory" to support a

reasonable inference that the District and the Commission's failure to train and supervise its

employees regarding its policies on release of pupils during the school day caused Littlejohn's

unlawful release of N.R. to an unidentified adult.  See Tirado v. Montgomery Cnty., Pa., No. 12-

CV-00552, 2013 WL 1285487, at *8 (E.D. Pa. Mar. 29, 2013).

        In the Complaint, plaintiff alleges the following facts with respect to her Monell claim:

the District provides educational services to minor children in Philadelphia County, and the

Commission adopts and enforces all regulations for school affairs and the conduct of employees

and students of the District.  (Compl. ¶¶ 4, 7.)  "The District had a self-described commitment to

create a safe, positive environment for all students. . . ."  (Id. ¶ 45.)  The District's policies

authorize only the principal or his or her designee, the assistant principal, or the teacher-in-

charge to release students during the school day and require that the release take place in the

school office.  (Id. ¶¶ 15, 16.)  The District's policies also provide that "under no circumstances may a pre-kindergarten through Grade 8 pupil be released without a properly identified adult" or without "the adult's identification [being] checked against school records."  (Id. ¶¶ 16, 25.) "Despite their awareness of the risk of pupil abduction by unidentified adults," the District and the Commission failed to train and supervise employees "regarding policies for release of pupils during the school day."  (Id. ¶¶ 52, 53).  Finally, "[a]s a direct result of the actions of defendants," "N.R. was caused to suffer the injuries set forth in [the Complaint]."  (Id. ¶¶ 55, 56.)

First, plaintiff has adequately alleged a deficiency, specifically defendants' failure to train and supervise employees "regarding policies for release of pupils during the school day." (Compl. ¶ 53); see Hall v. Raech, No. 08-5020, 2009 WL 811503, at *5 (E.D. Pa. Mar. 25, 2009) (plaintiff adequately plead training deficiency where he alleged that "defendants failed 'to train. . . officers to distinguish between criminal activity and medical emergencies.'") (citation omitted); Tirado, 2013 WL 1285487, at *8 (deficiency adequately alleged where plaintiff asserted that county "training and supervision [was] deficient in the proper and improper use of physical force upon inmates").  Second, plaintiff has satisfied the causation element of her Monell claim.  See Hall v. Raech, 2009 WL 811503, at *5 ("Hall's averments satisfy the causation element of a Monell claim, as Hall asserts that the failure to adequately train officers 'resulted' in the violation of his constitutional rights.").

Finally, while the Complaint does not allege a pattern of similar constitutional violations resulting from the training and supervision deficiency asserted, the facts as alleged are sufficiently analogous to the circumstances in the hypothetical example in Canton to allow the claim to proceed under the "single violation theory."  Just as in the Canton scenario, plaintiff

alleges in this case that the District and the Commission instituted policies that charged only a specific set of officials with vital authority, i.e. the authority to release young students during the school day, and failed to train and supervise employees on the exercise of and restrictions on that power.  The Complaint further avers that defendants failed to provide this training and supervision, "[d]espite their awareness of risk of child abduction," the precise risk that was realized in this case.  (Compl. ¶¶ 52, 53.)  Plaintiff's allegations regarding the District's policies, strictly limiting the circumstances under which young students may be released during the school day, further support a reasonable inference that defendants were aware of the risks involved in releasing students and that the risk of N.R.'s injury was a "highly predictable consequence" of defendants' failure to provide training or supervision with respect to their release policies. Because plaintiff has adequately plead the elements of her Monell claim under the "single-violation theory," the Court will allow plaintiff's cause of action to proceed against the District and the Commission.  See Foulke v. McCloud, No. 13-5458, 2014 WL 47726, at *6 (D.N.J. Jan. 7, 2014) (allowing plaintiff's cause of action against county defendant to proceed in light of "single violation theory" where only single incident of excessive force was plead).  This ruling does not preclude plaintiff from attempting to establish Monell liability at trial on the basis of a pattern of violations.

## V.   CONCLUSION

For the foregoing reasons, defendants' Motion to Dismiss is denied.  An appropriate order follows.